1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Nielsen, | No. CV-16-04016-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Madison National Life Insurance Company, | |
| Defendant. | |

Pending before the Court is the Motion for Summary Judgment of Defendant Madison National Life Insurance Company ("Madison National"). (Doc. 45). For the following reasons, the Court denies the Motion.

**BACKGROUND**

In 2007, Plaintiff Martha Nielsen worked as an elementary school principal for Millard Public Schools in Omaha, Nebraska. Defendant Madison National provided a long-term disability insurance policy to Plaintiff and other district employees. The insurance policy, in relevant part, states that Madison National will provide benefits in the event an insured is determined to be totally disabled. (Doc. 46, Ex. 2, p. 20). The policy defines "total disability" as (1) when the insured "cannot perform each of the substantial and material duties of [her] regular occupation" and (2) when, after 24 months of the payment of benefits, "[the insured] cannot perform each of the substantial and material duties of any gainful occupation for which [the insured is] reasonably fitted by training, education[,] or experience." *Id*. at p. 19. Upon request, the insured must provide

Madison National with "proof of continued total disability." *Id*. at p. 20.

Ms. Nielsen fell and broke her leg on May 24, 2007. *Id*. at Ex. 3. She filed a claim for disability benefits with Madison National on July 30, 2007. *Id*. Madison National approved her claim on September 24, 2007. *Id*. at Ex. 6. Although Ms. Nielsen's doctor, Samuel Phillips, had initially predicted a fast recovery, Ms. Nielsen did not improve as expected. *Id*. at Exs. 4, 7–10. In August 2008, Dr. Phillips opined that Ms. Nielsen would likely qualify for permanent disability. *Id*. at Ex. 11. As provided for in the insurance policy, after 24 months of benefits, the inquiry switches from whether the insured can perform the duties of her regular occupation to whether the insured can perform the duties of any gainful occupation. Thus, Madison National commissioned an independent medical examinations ("IME") to assess Ms. Nielsen's capacities. In June 2009, Dr. Joseph Bocklage submitted a report opining that Ms. Nielsen likely could not work in even a sedentary occupation and that she had reached maximum medical improvement. *Id*. at Ex. 14. In November 2009, Dr. Anil Agarwal examined Ms. Nielsen and stated that she had functional limitations, but would be able to work in a sedentary or light duty capacity. *Id*. at Ex. 16. The reports of Dr. Bocklage and Dr. Agarwal were sent to a Vocational Expert ("VE") to determine whether Ms. Nielsen could be employed in any gainful occupation with her medical restrictions. The VE identified a number of alternative positions in which Ms. Nielsen could work. *Id*. at Ex. 18. But, Madison National determined that none of those jobs had a rate of pay high enough to be considered "gainful employment," and thus continued to pay benefits. *Id*. at Ex. 15.

In March 2016, Madison National received reports from Ms. Nielsen's doctors that a new treatment had significantly reduced her pain. *Id*. at Ex. 30. Ms. Nielsen had moved to Arizona and begun seeing new doctors at Arizona Pain Specialists, PLLC. *Id*. at Ex. 27. Dr. Tory McJunkin and Dr. Jacob Amrani implanted a spinal cord stimulator in Ms. Nielson. *Id*. A trial implant was placed on December 30, 2015, and a permanent implant was placed on January 4, 2016. *Id*. Over a dozen appointments after the trial implant was placed, Ms. Nielsen reported that her pain was relieved by 40 to 60 percent.

*Id*. After receiving the doctor's records reporting a significant pain reduction, Madison National scheduled for Ms. Nielsen to undergo a new IME. Madison National hired a vendor to locate a physician, and the vendor identified Dr. Scott Krasner. Ms. Nielsen and Dr. Krasner met for the IME. Dr. Krasner's report states that Ms. Nielsen has some functional limitations but that he believes she would be able to perform some work. *Id*. at Ex. 29. Dr. Krasner's report also stated that he had witnessed Ms. Nielsen driving herself to the appointment and moving around outside her car with no abnormal gait or use of a cane. *Id*. Ms. Nielsen disagrees with Dr. Krasner's representations and also states that his examination of her was significantly shorter than he reported. (Doc. 52, Ex. 1). Once Madison National received Dr. Krasner's report, it was forwarded to a VE. The VE identified multiple jobs which an individual with Ms. Nielsen's training and functional limitations could perform. (Doc. 46, Ex. 34). This time, Madison National concluded that the rate of pay was high enough that Ms. Nielsen's work at such an employer would constitute gainful employment. Madison National terminated Ms. Nielsen's disability benefits on May 10, 2016. *Id*. at Ex. 36. In subsequent appointments with her physicians, beginning on May 16, 2016, Ms. Nielsen reported that her statements of 50 percent pain relief were inaccurate and that the minimal improvement of her pain did not improve her activities of daily living. *Id*. at Ex. 27. She believes that her initial reports of pain relief were due to a honeymoon period that later waned. (Doc. 52, Ex. 1).

Ms. Nielsen sued, alleging breach of contract and breach of the duty of good faith and fair dealing. Madison National moves for summary judgment on both grounds.

**DISCUSSION**

**I. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**II. Analysis**

**A. Breach of Contract**

A plaintiff must show that an enforceable contract exists, that it was breached, and that the plaintiff suffered damages to sustain a breach of contract claim. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Plaintiff's contract for insurance provides that Defendant must pay her disability benefits as long as "[she] cannot perform each of the substantial and material duties of any gainful occupation for which [she is] reasonably fitted by training, education[,] or experience." (Doc. 46, Ex. 2, p. 19). Defendant argues that Plaintiff has failed to meet her burden under *Celotex* to produce evidence sufficient to establish a genuine dispute of material fact. Defendant asserts that Plaintiff must put forward expert evidence of her functional capacity and expert evidence of her vocational options given her functional capacity.

Nevertheless, Plaintiff has made a showing sufficient to establish a genuine dispute of material fact. Although Plaintiff was initially disabled due to breaking her leg, she also has diagnoses relating to chronic pain syndromes. Plaintiff provided notice to Defendant that three of her treating physicians—Dr. Phillips, Dr. McJunkin, and Dr. Amrani—would testify about her pain and its effects. Plaintiff herself can testify about the severity of her pain.

///

Defendant's expert, Dr. Krasner, did a consultative examination of Plaintiff and opined as to her functional capacities. He assessed that Plaintiff can lift up to 40 pounds, stand or walk up to 15 minutes at a time, sit without any restrictions, and may bend on occasion. Defendant's vocational expert provided occupations that Plaintiff, with an educational background, could perform in a sedentary capacity. If the jury believes Plaintiff and her treating physicians, then a jury could find that Plaintiff cannot do any gainful occupation and that Defendant breached the contract. Plaintiff has also raised questions of fact about the veracity of Dr. Krasner's report. Plaintiff asserts that she used her cane while ambulating around her car and that Dr. Krasner's evaluation of her was very minimal and short. Dr. Krasner, by contrast, reported that he observed her ambulating without her cane and that his examination of her lasted 50 minutes. Plaintiff also alleges that she reported these concerns to Defendant after receiving a copy of the report. Plaintiff has put forward evidence that creates genuine disputes of material fact for the jury to resolve.

### B. Breach of Duty of Good Faith and Fair Dealing

In Arizona, "there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." *Noble v. Nat'l American Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). Where an insurer "intentionally and unreasonably denies or delays" payment of a claim, the insurer has breached the duty of good faith. *Rawlings v. Apodaca*, 726 P.2d 565, 572 (Ariz. 1986). A plaintiff must show (1) "the absence of a reasonable basis for denying benefits of the policy" and (2) "the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble*, 624 P.2d at 868. Thus, the "initial inquiry consists of an objective finding, i.e., whether the insurer acted unreasonably, [and] the second inquiry focuses on the insurer's conduct and whether the insurer *knew* that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it." *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz. 1992). A plaintiff "may simultaneously bring an

action for both breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim." *Id.* at 1270.

Plaintiff retained an expert on insurance bad faith practices, Mary Fuller. Ms. Fuller's expert report opines that Defendant failed to follow industry standards in its processing of the review of Plaintiff's benefits. (Doc. 52, Ex. 17). Ms. Fuller stated that Defendant's actions showed a focus on terminating benefits and a failure to fully investigate the insured's claims. Defendant argues that Ms. Fuller's analysis is unfounded. But to the extent that Defendant's motion seeks to double as a *Daubert* motion, Defendant has, at least in its motion, failed to meet its burden that Ms. Fuller is not a qualified expert. Ms. Fuller has years of experience in the insurance field, and Defendant provides no explanation as to why Ms. Fuller cannot discuss industry standards. Defendant's expert, Vicki Roberts, submitted a report stating that Defendants did comply with industry standards. (Doc. 54, Ex. A). Given Ms. Fuller's opinion on industry standards, reasonable jurors could believe that Defendant acted unreasonably and knew it by failing to speak with Plaintiff's treating physicians and not following up after receiving complaints about the independent medical examination. The disputes as to whether Defendant acted reasonably and with a reckless disregard are questions for the jury to resolve.

Plaintiff's Response to the Motion for Summary Judgment moves for the Court to enter judgment on the bad faith claim for Plaintiff. (Doc. 51). For all the reasons stated above, the Court denies this request. Defendants have evidence that a jury could believe demonstrates that they acted in good faith in denying Plaintiff's claim.

## CONCLUSION

Disputes of fact exist as to whether Defendant breached the insurance contract and its duty of good faith. Plaintiff has doctors who can testify about her condition and pain. Both parties have experts who disagree as to whether Defendant acted reasonably in evaluating Plaintiff's claim.

///

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Defendant Madison National Life Insurance Company (Doc. 45) is **DENIED**.

Dated this 19th day of July, 2018.

_____
Honorable G. Murray Snow
United States District Judge